IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP SECURITIZATION TRUST, SERIES 2014-2, | § § § § § | |
| Plaintiff, | § § | |
| V. | § § § | 1-15-CV-552 RP |
| ANGEL ROB AND KCEVIN ROB, | § § | |
| Defendants. | § § | |

## ORDER

Before the Court are Defendants' Motion To Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), filed August 13, 2015 (Clerk's Dkt. #11) and the responsive pleadings thereto. After reviewing the parties' pleadings, relevant case law, as well as the entire case file, the Court issues the following order.

### I. BACKGROUND

Plaintiff Wilmington Trust, National Association filed this action in its capacity as Trustee of ARLP Securitization Trust, Series 2014-2 ("Wilmington") naming as defendants Angel and Kcevin Rob. According to Plaintiff, on July 26, 2007 Kcevin Rob ("Mr. Rob") executed a Texas Home Equity Note ("Note"), secured by a Security Instrument granting a security interest in real property (collectively "the Loan") located at 12003 Thompkins Drive, Austin, Texas ("the Property"). The lender was EquiFirst Corporation ("EquiFirst"). (Plf. 1st Am. Compl. ¶ 6). Wilmington alleges it is the current owner and holder of the Note, through a series of assignments. (*Id.* ¶ 7).

Plaintiff further alleges, on June 20, 2014, Ocwen Loan Servicing LLC ("Ocwen") sent a notice to Defendants advising them Ocwen was acting as mortgage servicer for Wilmington. According to Plaintiff, Mr. Rob has failed to make his payments under the Note and on March 5,

2012 notice of default and intent to accelerate were sent to Mr. Rob at the Property.  (*Id.* ¶¶ 9-11).
Plaintiff alleges the default has not been cured to date.  (*Id.* ¶ 11).

Although not precisely clear, it appears the Loan was first accelerated on June 22, 2011.
Plaintiff states that acceleration was rescinded pursuant to a written notice of rescission sent to
Defendants on October 30, 2014.  (*Id.*).

By way of this lawsuit, Plaintiff seeks to judicially foreclose on the Property.  Plaintiff
alternatively seeks a judgment that it is equitably subrogated to all amounts paid to other creditors
on behalf of the Defendants after their default.  (*Id.* ¶¶ 13-22).

Defendants have now filed a motion to dismiss, arguing this Court lacks jurisdiction,
Plaintiff's claims are not ripe, and also that Plaintiff has failed to state a claim for relief.  The Court
will address those arguments in turn.

## II.  JURISDICTION

### A.    Applicable Law

Generally, a federal court has jurisdiction over a case in two circumstances.  The first,
known as federal question jurisdiction, exists if a case is "founded on a claim or right arising under
the Constitution, treaties or laws of the United States."  28 U.S.C. § 1441(b).  Implementation of
this statute is controlled by the well-pleaded complaint rule.  This rule provides that a "properly
pleaded complaint governs the jurisdictional determination and if, on its face, such a complaint
contains no issue of federal law, then there is no federal question jurisdiction."  *Aaron v. Nat'l Union
Fire Ins. Co.*, 876 F.2d 1157, 1160-61 (5th Cir. 1989).  Stated differently, jurisdiction exists if the
complaint establishes: (1) federal law creates the cause of action; or (2) federal law is a necessary
element of one of the well-pleaded claims.  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S.
800, 808-09, 108 S. Ct. 2166, 2173-74 (1988); *Franchise Tax Bd. v. Constr. Laborers Vacation
Trust*, 463 U.S. 1, 27-28, 103 S. Ct. 2841, 2856 (1983).

2

The second circumstance in which a federal court has jurisdiction is known as diversity jurisdiction.  A suit between parties of diverse citizenship may be adjudicated in a federal forum only if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a).  The party seeking to invoke federal diversity jurisdiction bears the burden of establishing both that the parties are diverse and that the amount in controversy exceeds $75,000.  *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

## B.    Discussion

Plaintiff asserts this Court has jurisdiction based on diversity of citizenship.  Plaintiff alleges, and Defendants do not disagree, that Defendants are both citizens of Texas.  Plaintiff asserts it is a national banking association with its main office located in Delaware, and is thus a citizen of that state for jurisdictional purposes.  28 U.S.C. § 1348 (national banking associations are "deemed citizens of the States in which they are respectively located"); *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006) (national banking association "located" for purpose of diversity jurisdiction, "in the State designated in its articles of association as its main office").

Defendants contend Wilmington's citizenship as a national banking association is not determinative, however.  Rather, according to Defendants, the citizenship of the trust on whose behalf Wilmington sues governs the question of citizenship.  In this case, Defendants maintain the ARLP Securitization Trust, Series 2014-2 is a Delaware Statutory Trust organized as an unincorporated association.  Defendants argue, as an unincorporated association, the trust's citizenship is the citizenship of all of its shareholders or beneficiaries.  *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990) ("diversity jurisdiction in a suit by or against [limited partnership] depends on the citizenship of 'all the members'").

Plaintiff, in turn, points out that the Supreme Court has clearly held the citizenship of a trust is that of its trustee.  *Navarro Savs. Ass'n v. Lee*, 446 U.S. 458, 464 (1980).  Defendants argue the

decision in *Navarro* is distinguishable because the trust in that case was an express trust, rather than an unincorporated association. They also contend the Supreme Court's decision in *Carden* effectively superseded the holding in *Navarro* as to non-express trusts.

Defendants are correct that the decision in *Navarro* is not precisely on point factually, both because the trust at issue was of a different legal formulation than in this case and because the trustees in *Navarro* were sued in their own names for breach of contract. However, Defendants fail to consider the effect of a subsequent Fifth Circuit decision. At issue in that case was the citizenship of a limited partnership composed of a variety of business entities, including a trust. Without discussion, the Fifth Circuit noted that the citizenship of the partner trust was that of its trustee, citing *Navarro*. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 397 n.6 (5th Cir. 2009).[1] Other circuit courts have held similarly, citing *Navarro*. *See Johnson v. Columbia Props. Anchorage, L.P.*, 437 F.3d 894, 899 (9th Cir. 2006); *May Dep't Stores Co. v. Fed. Ins. Co.*, 305 F.3d 597, 599 (7th Cir. 2002); *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 931 (2d Cir. 1998). *But see Conagra Foods, Inc. v. Americold Logistics, LLC*, 776 F.3d 1175, 1181-82 (10th Cir. 2015) (assessment of citizenship of trust must include beneficiaries); *Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 205 (3d Cir. 2007) (*Carden* directs that "both the trustee and the beneficiary should control in determining the citizenship of a trust.").

This Court thus concludes, in accord with other district courts in the Fifth Circuit, that the citizenship of Wilmington, as trustee, is to be considered in determining whether there is diversity of citizenship in this action. *Rivas v. U.S. Bank Nat'l Ass'n*, 2015 WL 3613653, at *1 (S.D. Tex. June 9, 2015) (citizenship of plaintiff, named as "U.S. Bank National Association as Trustee for Master Asset Backed Securities Trust 2007–HE2" determined by citizenship of trustee bank, citing

---

[1] The Court is aware that other district courts have suggested *Mullins* is wrongly decided as it does not reference, and cannot be reconciled with, the decision in *Carden*. *See Berry v. Chrysler Grp., LLC*, 2013 WL 416218, at *6 (S.D. Tex. Jan.31, 2013). However, as Fifth Circuit precedent, *Mullins* Is binding on this court.

*Navarro*); *WBCMT 2007-C33 Blanco Retail, LLC v. Salfiti*, 2014 WL 325407, at *2 (W.D. Tex. Jan. 29, 2014) (citizenship of plaintiff, identified as "U.S. Bank National Association, as Trustee for the Registered Holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass–Through Certificates, Series 2007–C33" determined by citizenship of U.S. Bank as trustee, citing *Navarro*).  *See also Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc.*, 2013 WL 3328694, at *3 (N.D. Tex. July 2, 2013) (citizenship of trust is that of its trustees); *LSM Trust v. Healthcare of Today, Inc.*, 2012 WL 2022114, at *1 (E.D. Tex. Apr. 12, 2012), adopted in 2012 WL 2013451 (E.D. Tex. June 5, 2012) (same); *Dillard Family Trust v. Chase Home Fin.*, 2011 WL 6747416, at *3 (N.D. Tex. Dec. 23, 2011) (same); *K & D Equity Investments, Inc. v. Cannex Therapeutics*, 2009 WL 5173710, at *3 (E.D. Tex. Dec. 22, 2009) (same).  As Wilmington is a citizen of Delaware and Defendants are citizens of Texas, complete diversity exists and the exercise of jurisdiction is proper.  Accordingly, Defendants are not entitled to dismissal on this basis.

### III.  RIPENESS

Defendants next argue Plaintiff's claims are not ripe, and therefore this action should be dismissed for lack of jurisdiction.

### A.      Applicable Law

Article III of the United States Constitution limits the jurisdiction of federal courts to cases and controversies.  U.S. CONST. art. III, § 2; *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980).  The justiciability doctrines of standing, mootness, political question, and ripeness "all originate in Article III's 'case' or 'controversy' language."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  The ripeness doctrine is additionally drawn "from prudential reasons for refusing to exercise jurisdiction."  *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).  The ripeness doctrine's "basic rationale is to prevent the courts, through avoidance of

premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967).  Thus, a case is properly dismissed case for lack of ripeness "when the case is abstract or hypothetical." *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012).

**B.    Discussion**

Defendants contend Plaintiff's claim is not ripe for review because Plaintiff failed to satisfy a precondition to filing suit to enforce the Loan.   Specifically, Defendants cite language in the Security Instrument which provides:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

(Plf. 1st Am. Compl. Ex. B ¶ 19).  Defendants maintain Plaintiff implicitly admits it failed to provide the required notice by stating in the First Amended Complaint that Defendants failed to make the payments required under the Loan and "[a]s a result of Defendants' failure to cure the default, Plaintiff accelerates the maturity of the debt and provides notice of this acceleration through the service of this Amended Complaint."  (Plf. 1st Am. Compl. ¶¶ 10, 12).

But Defendants' argument fails to consider the allegations in, and attachments to, Plaintiff's complaint.  Plaintiff has alleged notice of default and intent to accelerate, which included affording Defendants an opportunity to cure their default, was mailed to Defendants on March 5, 2012.  (*Id.* ¶ 11 & Ex. E).  Admittedly, Plaintiff later provided Defendants with a written notice of rescission of the subsequent acceleration.  (*Id.* & Ex. F).  But, Defendants were clearly provided with the notice required under the terms of the Security Instrument.  And they point to nothing which indicates that a rescission by Plaintiff of the acceleration of the debt would act as a rescission of the previously

provided notice.  Accordingly, the Court declines to find this action should be dismissed for lack of ripeness.

## IV.  FAILURE TO STATE A CLAIM

Defendants additionally argue this action should be dismissed because Plaintiff has failed to state an actionable claim for either judicial foreclosure or equitable subrogation.

### A.      Standard of Review

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true.  *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id.* at 570.  The court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief.  If not, "the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting FED. R. CIV. P. 8(a)(2)).

### B.      Discussion

Defendants contend Plaintiff has failed to state an actionable claim for judicial foreclosure because Plaintiff has not shown a contractual basis for Defendants' liability.   Defendants'

contention is based on flaws they perceive in the documents attached to Plaintiff's complaint. Specifically. Defendants point out that the Note identifies only Kcevin Rob as the borrower, while the Security Instrument identifies both Kcevin Rob and Angel Rob as the borrower.  (Plf. 1st Am. Compl. Exs. A-B).

The Court agrees the discrepancy is somewhat troubling.  However, the standard of review at this preliminary stage is not whether Plaintiff has established an entitlement to relief, but rather whether Plaintiff has alleged facts which plausibly give rise to an entitlement to relief.

A claim for judicial foreclosure in Texas requires the plaintiff to show that: (1) a debt exists; (2) the debt is secured by a lien created under Texas law; (3) the borrower is in default; and (4) the borrower has been properly served with notice of default.  *See* TEX. PROP. CODE § 51.002(d); *Huston v. U.S. Bank Nat'l Ass'n*, 988 F. Supp. 2d 732, 740 (S.D. Tex. 2013), *aff'd*, 583 F. App'x. 306 (5th Cir. 2014).  Plaintiff here has alleged a loan agreement, composed of a promissory note and security instrument, was entered into by one or both of the defendants on July 26, 2007 in the amount of $113,600 related to real property located at 12003 Thompkins Drive, Austin, Texas.  (Plf. 1st Am. Compl. ¶ 6).  Plaintiff has further alleged the loan is in default and the defendants were served with notice of the default.  (*Id*. ¶¶ 10-11).  The Court finds these allegations set forth sufficient facts to state a plausible claim for relief, and Defendants are therefore not entitled to dismissal of Plaintiff's claim for judicial foreclosure on this basis.

Defendants finally argue Plaintiff's alternative claim for equitable subrogation should be dismissed for two reasons.  First, Defendants maintain Texas courts do not recognize equitable subrogation as a cause of action.  According to the Texas Supreme Court, the doctrine of equitable subrogation allows a party to step into the shoes of another party, asserting claims that it would otherwise be unable to assert, and "Texas courts interpret the doctrine liberally."  *Frymire Eng'g Co., Inc. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008).  Contrary to Defendants' assertion, courts applying Texas law have regularly permitted a party to assert a claim of equitable

subrogation.  *See Royal Ins. Co. of Am. v. Caliber One Indem. Co.*, 465 F.3d 614, 615 (5th Cir. 2006) (holding that "the excess carrier was entitled to pursue a cause of action based on equitable subrogation"); *Admiral Ins. Co. v. Arrowood Indem. Co.*, 471 B.R. 687, 700 (N.D. Tex. 2012) (finding party "has stated a claim for equitable subrogation"); *LaSalle Bank Nat'l Ass'n v. White*, 246 S.W.3d 616, 620 (Tex. 2007) (describing plaintiff's "equitable subrogation claim" as arising from "payment of the pre-existing, constitutionally valid liens, which allowed the bank to step into the shoes of the prior lienholders"); *Am. Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 483 (Tex. 1992) ( "[W]e hold that an excess carrier may bring an equitable subrogation action against the primary carrier."); *Argonaut Ins. Co. v. Allstate Ins. Co.*, 869 S.W.2d 537, 543 (Tex. App.–Corpus Christi 1993, writ denied)) (describing "key elements" of equitable subrogation claim).

Second, Defendants contend Plaintiff has not shown an entitlement to equitable subrogation based on the payment of property taxes for the Property.  According to Defendants, Plaintiff has not alleged any payment of property taxes and thus cannot seek to stand in the shoes of a taxing entity and further that Texas statutes prohibit any transfer of a tax lien without authorization.  As to the first contention, Plaintiff has alleged it paid property taxes and insurance on the Property following Defendants' default.  (Plf. 1st Am. Compl. ¶ 19).  As to the second contention, the Texas Supreme Court permitted the lender of a home equity loan to recover on a claim of equitable subrogation for the payment of pre-existing property tax liens paid by the loan when the borrower subsequently defaulted.  *LaSalle Bank*, 246 S.W.3d at 620.  Accordingly, Defendants have not shown dismissal of Plaintiff's equitable subrogation claim is warranted.

## V.  CONCLUSION

The  Court  hereby  **DENIES**  Defendants'  Motion  To  Dismiss  Plaintiff's  First  Amended

Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Clerk's Dkt. #11).

**SIGNED** on November 12, 2015.


ROBERT L. PITMAN
UNITED STATES DISTRICT JUDGE